UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 12-20148-CIV-MORENO/BROWN

RICHARD MAHSHIE,

    Plaintiff,

vs.

INFINITY INSURANCE COMPANY,

    Defendant.
_____/

**PLAINTIFF'S MOTION TO COMPEL DISCOVERY**
**&**
**MOTION TO EXTEND DISCOVERY DEADLINE AND**
**TO EXCEEED DEPOSITION LIMIT**

The Plaintiff pursuant to Federal Rules of Civil Procedure 34 and S.D. Fla. Local Rules 7.1 by and through undersigned counsel, hereby files the above Motion and states:

**I.    INTRODUCTION**

This is an action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 216 (b), wherein Plaintiff seeks to recover from Defendant three (3) years of unpaid overtime and liquidated damages pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq.

Plaintiff maintains that during the 3 year employment period referenced in his complaint employed as field insurance appraiser, that Defendant knowingly permitted, condoned and turned a blind eye to its appraisers working unpaid overtime hours all for the sake of saving on labor costs. To be sure, Plaintiff maintains that his managers knowingly permitted him to work off the clock so as facilitate his completion of appraisal quotas which would otherwise be untenable absent Plaintiff working many hours of overtime. In essence, despite its purported policy prohibiting working off the clock, the company in reality had a "don't ask and don't tell" policy which permitted overtime hours

provided that the employee did not record and seek compensatipn for the true hours worked.

Throughout this litigation, given that all witnesses with knowledge of the issues in this case are still employed by Defendant, it is not surprising that their deposition testimony was in large part skewed in favor of the Defendant. With the exception of one appraiser, Ben Smith, who testified somewhat truthfully in deposition and corroborated Plaintiff's claim that overtime necessarily had to be worked in order to complete the assigned workload, most of the other deposed employees had memory lapses and/or were simply not willing to jeopardize their livelihoods by testifying truthfully. Although Mr. Smith did confirm some of Plaintiff's allegations, he was nonetheless reluctant to again give too much testimony against his employer as it clearly appeared that he was concerned about losig his job. In turn, Defendant's management capitalized on its employees' general reluctance to testify against it and continues to perpetuate a fiction wherein it claims that overtime was unecessary and that Plaintiff was merely some rogue employee who inexplicably refused to follow company overtime policies. To be sure, when questioned at deposition as to whether Defendant knew of *other* appraisers besides Plaintiff who worked overtime, Defendant incredibly (with the exception of one isolated incident) disclaimed being aware of any undocumented overtime being worked by its South Florida appraisers or that overtime was necessary to meet its quotas.

Despite the above, Plaintiff was able to secure through document production (i.e. Plainitff's e-mails) certain electronic documents,[1] which confirmed that Defendant was not only aware of overtime being worked, but contributed to and condoned this illegal practice. Incredibly, despite various

---

1    Defendant maintained electronic note taking systems and documents bearing time stamps reflecting hours worked by Plaintiff all of which were routinely reviewed by Defendant's managers and decision makers. Despite admitting in depositon that they routinely over a period of 3 years, pretty much every single one of Defendant's managers convenientely claim to have overlooked dozens of emails, notes and uploaded appraisal reports which bearnot to have noticed have realized/noticed until the time of Plaintiff's termination that Plaintiff would routinely work past 9 PM at night.

computerized records (i.e. Florida Sunpass toll receipts, after hour computerized appraisal report uploads, after hour time stamped case notes and after hour emails and faxes), Defendant's managers all made claim that they somehow overlooked the fact that Plaintiff working very significant overtime hours. When these managers were questioned about whether they condoned such businesses practices and whether other appraisers also worked unpaid overtime, they again claimed ignorance. Simply put, this is not the type of case where witnesses will come forward and give truthful testimony as to do so will likely result in retribution.

In order to disprove Defendant's claim that Plaintiff was merely some rogue employee who inexplicably (i.e. without obvious necessity) chose to work off the clock without being paid overtime pay, Plaintiff in this case must rely almost exclusively upon documentary evidence which establishes that the practice of working off the clock was known to Defendant. For instance, Plaintiff propounded upon Defendant various requests for the production of documents containing date/time stamps and which are of such an obvious nature, that no reasonable manager could possibly have missed identifying employees who were regularly working off the clock. For example, despite Defendant's claim that it had no idea that Plaintiff was working off the clock and that Plaintiff was purportedly concealing this information from it, discovery[2] revealed that Plaintiff was quite open about his overtime work and in fact wrote Defendant's accounting manager (Tammy Felton) the following:

---

[2] The emails produced so far exclusively pertain to Plaintiff's e-mail account limited to after hours (9PM to 5AM,) and weekend emails.

3

> From: Rich Mahshie <rich.mahshie@ipacc.com>
> Sent: Tuesday, June 14, 2011 10:04 AM
> To: Tammy Felton <tammy.felton@ipacc.com>
> Subject: Re: FW: Expence Account Feb. 2011
>
> Tammy thanks for your help; I sure that I had sent Feb. before this ... however I saved it on my old lap top which was replaced when the hard drive went down;
>
> Either way ... I want to apologize for the delay it's not easy when your not in an office setting, rather in your car 10 -12 hrs each day. Most people don't realize how many hours we're driving each day. I average about 3,500 miles per month.
>
> I don't understand if the stickers ( toll transponder ) a fix to the vehicle; why can the tolls not be billed directly to the company? Just thinking out loud.

Absent written discovery seeking communications of the nature which is the subject of this motion to compel, such critical information (i.e. Defendant's claim that it had no idea Plaintiff was working off the clock) will not be discovered by Plaintiff.

    Not surprisingly, when Plaintiff sought further discovery to ascertain whether Defendant had a general business practice of causing appraisers to work unpaid overtime to only later disavow knowing of such illegal business practices, Defendant responded with evasive/non-responsive boiler-plate objections. In its objections, Defendant in a conclusory manner suggests that the documents (i.e. e-mails) sought involving after hour communication by other Miami based appraisers' and the same managers who supervised Plaintiff are somehow irrelevant. Despite efforts to resolve this discovery dispute, Defendant is bent on arguing that this is a single Plaintiff FLSA case and that Plaintiff's discovery of other appraisers' communications with Plainitff's supervisors/managers is somehow geared towards a collective action rather than a single Plaintiff case. As will become evident from the subsequent discussion, the discovery sought from Defendant in this motion to compel relates to after hours communications and to issues of Defendant's knowledge of overtime worked by its appraisers. This information is highly relevant and reasonably calculated to lead to the discovery of admissible evidence as the records sought to be compelled will shed light as to whether Defendant's

claims of ignorance are merely a discovery obstructionist tactic geared to hide a general business practice of knowingly commiting overtime abuses.

## II. STANDARD FOR PERMISSIBLE DISCOVERY

Defendant wrongfully refuses to provide responses to clearly relevant equests to produce. The courts have applied more liberal discovery rules in employment cases. *See* e.g. Sweat v. Miller Brewing Co., 708 F.2d 655 (11th Cir. 1983).  In the instant case, Defendant has tendered virtually nothing but a general and boilerplate laundry list of conclusory objections devoid of any factual substance or basis.

The Federal Rules allow discovery of any relevant, non-privileged material that is admissible or reasonably calculated to lead to admissible evidence. McMahon v. Eastern Steamship Lines, Inc., 129 F.R.D. 197 (S.D. Fla. 1989).   Federal Rule 26(b)(1) broadly provides in pertinent part:

> **(1) In General.  Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter.  The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.**

In In re Infant Formula Antitrust Litigation v. Abbott Laboratories, the Court held as follows:

> **In the Advisory Committee Notes on the Rules, it is stated that the Purpose of discovery is to allow a broad search for facts which may aid a party in the preparation of their case... [T]he court must be careful not to deprive a party or discovery that is reasonably necessary to afford a fair opportunity to develop and prepare a case."**

In re Infant Formula Antitrust Litigation v. Abbott Laboratories, 1991 WL 185116 (N.D. Fla).

5

As more fully discussed *supra*, given that all the witnesses who have knowledge of Defendant's overtime abuses are current employees of Defendant, Plaintiff's only means of proving his case and to cast doubt on Defendant's defenses to is to do so through securing critical documents as though through this motion to compel.

### III. OBJECTIONS

The Defendant improperly objected to the following requests to produce:

### REQUEST NO. 1

Any and all emails generated and received by Geoff Shaw from 5PM to 9AM (Monday through Friday) and anytime on Saturdays and Sundays. Limit your response to the time period referenced in Plaintiff's complaint. Please provide an accompanying spreadsheet data compilation on disc.

### OBJECTIONS

Defendant objects to this interrogatory on the grounds that it is overbroad, unduly burdensome, seeks information that cannot be reasonably or readily obtained and is not reasonably accessible because of undue burden or cost and is irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence pertaining to Plaintiff's claims under the FLSA. Defendant also objects to this request on the grounds that it is not limited in temporal scope to the period of time in which Mr. Shaw supervised Plaintiff. Defendant also objects to this request on the grounds that counsel, in their Rule 26 conference, agreed that Infinity would only be required to produce all emails from Plaintiff's email account (subject to privilege and confidentiality concerns) that were received or sent from 5PM to 9AM (Monday through Friday) and anytime on Saturdays and Sundays, in order to create a reasonable limitation on the scope of electronic discovery in this matter.

### DISCUSSION

As it relates to Request to Produce # 1, Geoff Shaw is one of Plaintiff's former managers who testified that he wrote Plaintiff up in 2009 for working off the clock. Mr. Shaw further testified not knowing of any other appraiser other than Plaintiff who was working off the clock. Plaintiff testified having discussed the issue of after hours work with Mr. Shaw and the fact that Infinity Insurance Company was overloading him with work and causing him to be the conduit for assigning appraisals in South Florida. Not surprisingly, Mr. Shaw denied having such a discussion with Plaintiff and

further claimed ignorance (i.e. as to appraisers having to work overtime). In fact, in his deposition, Plaintiff testified about being overloaded with work and stated the following (P. 127-128):

```
15        A.   Not in the response.  I did have direct
16   communication with Geoff Shaw and Emma.  I told them,
17   What the heck is this about?  You guys are playing dumb.
18   You knew that I was getting 30 or 40 a week.  Why am I
19   taking the bullet for this?
20        Q.   What did they say?
21        A.   Emma said, I know, I know, but Geoff does
22   everything by the book.  Don't worry about this.  This
23   is about you now, we'll make it better.  Don't worry.
```

This claimed lack of knowledge can easily be disputed by reviewing Mr. Shaw's after hour and weekend email activity which will establish whether or not he was aware or should have been aware of other appraisers sending after hour emails and working off the clock[3] especially given that the records sought are computerized, date and time stamped documents. The documents sought by Plaintiff are documents that Defendant maintains in digital format which can easily be and without significant expense be produced on disc.[4]

---

3   The facts of this case are not complicated but do require that Plaintiff be permitted to develop his case and to disprove Defendant's claims that it was unaware that overtime was being worked by virtually every single one of its field appraisers. Given that the majority of all witnesses who could or should have corroborated Plaintiff's version of events are all adverse witnesses and are still employed by Defendant.  Truthful testimony from these current employees which would corroborate Plaintiff's position is simply not forthcoming.

4   In fact, the virtually identical documents (i.e. Plaintiff's after hour and weekend emails) sought relating to Geoff Shaw which were contained in Plaintiff's e-mail box establish that Plaintiff was routinely sending after hour emails to his direct manager (Omar Nieves). Incredibly, Mr. Nieves testified that he overlooked the late night email time stamps and these dcouments establish that Plaintiff was not concealing the off the clock and that Defendant was simply allowing this practice to

Contrary to Defendant's assertion wherein it represents to this Court that Plaintiff agreed to limit the production of emails in this case to those sent and received by Plaintiff's from his company email account, such an assertion is simply preposterous. To be sure, on April 6, 2012 when the parties conducted their Rule 26 conference, Plaintiff agreed to limit the production of email records limited (without prejudice) to Plaintiff's e-mail account depending on what was developed in the course of discovery (i.e. namely after some depositions were taken). After Plaintiff conducted some depositions and reviewed preliminary discovery responses, it became evident that additional records would be needed for Plaintiff to adequately prepare his case. Defendant's attempt to limit discovery based on its claim that Plaintiff purportedly agreed to limit discovery is simply inaccurate.

### REQUEST NO. 2

Any and all emails generated and received by Emma Magnole from 5PM to 9AM (Monday through Friday) and anytime on Saturdays and Sundays. Limit your response to the time period referenced in Plaintiff's complaint. Please provide an accompanying spreadsheet data compilation on disc.

### OBJECTIONS

Defendant objects to this interrogatory on the grounds that it is overbroad, unduly burdensome, seeks information that cannot be reasonably or readily obtained and is not reasonably accessible because of undue burden or cost and is irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence pertaining to Plaintiff's claims under the FLSA. Defendant also objects to this request on the grounds that it is not reasonably limited in temporal scope.  Defendant also objects to this request on the grounds that counsel, in their Rule 26 conference, agreed that Infinity would only be required to produce all emails from Plaintiff's email account (subject to privilege and confidentiality concerns) that were received or sent from 5PM to 9AM (Monday through Friday) and anytime on Saturdays and Sundays, in order to create a reasonable limitation on the scope of electronic discovery in this matter.

### DISCUSSION

As it relates to Request to Produce # 2, Emma Magnole is one of Plaintiff's former managers who ultimately became one of the highest ranking managers in South Florida.  Plaintiff testified that

---

occur .

Emma Magnole was fully aware of his overtime hours worked and in fact discussed the matter with her when the issue came up in 2009 when Geoff Shaw questioned Plaintiff about working undocumented overtime. Ms. Magnole in fact advised Plaintiff that she would make things right by lessening his work load which never happened. *See* depositions excerpt, *supra* relating to Plaintiff's conversation with Emma Magnole.

To avoid redundancy and for the reasons set forth in request to produce # 1 above, Ms. Magnole's e-mails should be produced by Defendant as this will assist Plaintiff in establishing whether she received after hours e-mails from appraisers thereby negating Defendant's claim that it was unaware about appraisers working off the clock.

### REQUEST NO. 3

Any and all emails generated and received by Omar Nieves from 5PM to 9AM (Monday through Friday) and anytime on Saturdays and Sundays. Limit your response to the time period referenced in Plaintiff's complaint. Please provide an accompanying spreadsheet data compilation on disc.

### OBJECTIONS

Defendant objects to this interrogatory on the grounds that it is overbroad, unduly burdensome, seeks information that cannot be reasonably or readily obtained and is not reasonably accessible because of undue burden or cost and is irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence pertaining to Plaintiff's claims under the FLSA. Defendant also objects to this request on the grounds that it is not limited in temporal scope to the period of time in which Mr. Nieves supervised Plaintiff. Defendant also objects to this request on the grounds that counsel, in their Rule 26 conference, agreed that Infinity would only be required to produce all emails from Plaintiff's email account (subject to privilege and confidentiality concerns) that were received or sent from 5PM to 9AM (Monday through Friday) and anytime on Saturdays and Sundays, in order to create a reasonable limitation on the scope of electronic discovery in this matter.

### DISCUSSION

As it relates to Request to Produce # 3, Omar Nieves is one of Plaintiff's former managers who already testified in deposition and incredibly made claim that he overlooked the fact that Plaintiff was routinely sending him late night emails. See Footnote # 4, *supra*.

9

To avoid redundancy and for the reasons set forth in request to produce # 1 above, Mr. Nieves' after hour/weekend e-mails should be produced by Defendant as they will assist Plaintiff in establishing whether Defendant's claim that it was unaware about appraisers working off the clock is nothing more than a sham.

### REQUEST NO. 6

Any and all emails generated and received by Ben Smith from 5PM to 9AM (Monday through Friday) and anytime on Saturdays and Sundays. Limit your response to the time period referenced in Plaintiff's complaint. Please provide an accompanying spreadsheet data compilation on disc.

### OBJECTIONS

Defendant objects to this interrogatory on the grounds that it is overbroad, unduly burdensome, seeks information that cannot be reasonably or readily obtained and is not reasonably accessible because of undue burden or cost and is irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence pertaining to Plaintiff's claims under the FLSA. Defendant also objects to this request on the grounds that it is not reasonably limited in temporal scope. Defendant also objects to this request on the grounds that counsel, in their Rule 26 conference, agreed that Infinity would only be required to produce all emails from Plaintiff's email account (subject to privilege and confidentiality concerns) that were received or sent from 5PM to 9AM (Monday through Friday) and anytime on Saturdays and Sundays, in order to create a reasonable limitation on the scope of electronic discovery in this matter.

### DISCUSSION

As it relates to Request to Produce # 6, Ben Smith is one of Plaintiff's former co-workers and fellow appraisers who already testified at deposition and confirmed that the appraiser position required the routine working of overtime to complete the quotas set by Defendant.

To avoid redundancy and for the reasons set forth in request to produce # 1 above, Mr. Smith's after hour/weekend e-mails should be produced by Defendant as this will assist Plaintiff in establishing whether other appraisers were also working late hours and not getting paid for same.

10

## REQUEST NO. 7

Any and all emails generated and received by Jason Baker from 5PM to 9AM (Monday through Friday) and anytime on Saturdays and Sundays. Limit your response to the time period referenced in Plaintiff's complaint. Please provide an accompanying spreadsheet data compilation on disc.

## OBJECTIONS

Defendant objects to this interrogatory on the grounds that it is overbroad, unduly burdensome, seeks information that cannot be reasonably or readily obtained and is not reasonably accessible because of undue burden or cost and is irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence pertaining to Plaintiff's claims under the FLSA. Defendant also objects to this request on the grounds that it is not reasonably limited in temporal scope. Defendant also objects to this request on the grounds that counsel, in their Rule 26 conference, agreed that Infinity would only be required to produce all emails from Plaintiff's email account (subject to privilege and confidentiality concerns) that were received or sent from 5PM to 9AM (Monday through Friday) and anytime on Saturdays and Sundays, in order to create a reasonable limitation on the scope of electronic discovery in this matter.

## DISCUSSION

As it relates to Request to Produce # 7, Jason Baker is Plaintiff's former co-worker and fellow appraiser who was reprimanded by Omar Nieves (Plaintiff's manager) for working off the clock. In fact, Omar Nieves testified that he noticed Mr. Baker sending after hour emails and reprimanded. Incredibly, Mr. Nieves never noticed the dozens of after hour emails sent to him by Plaintiff. Plaintiff should have the opportunity to challenge Mr. Nieves' claim of being ignorant to overtime worked by appraisers.

To avoid redundancy and for the reasons set forth in request to produce # 1 above, Mr. Nieves's e-mails should be produced by Defendant as this will assist Plaintiff in establishing whether other appraisers were also working late hours and not getting paid for same.

## REQUEST NO. 9

Any and all emails generated and received by Jimmy Casas from 5PM to 9AM (Monday through Friday) and anytime on Saturdays and Sundays. Limit your response to the time period referenced in Plaintiff's complaint. Please provide an accompanying spreadsheet data

compilation on disc.

## OBJECTIONS

Defendant objects to this interrogatory on the grounds that it is overbroad, unduly burdensome, seeks information that cannot be reasonably or readily obtained and is not reasonably accessible because of undue burden or cost and is irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence pertaining to Plaintiff's claims under the FLSA. Defendant also objects to this request on the grounds that it is not reasonably limited in temporal scope to the period of time that Mr. Casas supervised Plaintiff. Defendant also objects to this request on the grounds that counsel, in their Rule 26 conference, agreed that Infinity would only be required to produce all emails from Plaintiff's email account (subject to privilege and confidentiality concerns) that were received or sent from 5PM to 9AM (Monday through Friday) and anytime on Saturdays and Sundays, in order to create a reasonable limitation on the scope of electronic discovery in this matter.

## DISCUSSION

As it relates to Request to Produce # 9, Jimmy Casas is one of Plaintiff's former managers and in fact was responsible for terminating Plaintiff. Mr. Casas testified in deposition claiming that he was unaware that Plaintiff or any other appraiser was working off the clock.

To avoid redundancy and for the reasons set forth in request to produce # 1 above, Mr. Casas' e-mails should be produced by Defendant as this will assist Plaintiff in establishing whether other appraisers were communicating with him after hours thereby disproving Defendant's claim of ignorance.

## REQUEST NO. 17

Any and all correspondence(s) and/or communications between Omar Nieves and/or any representative of Defendant and Jason Baker as it relates to the overtime issues and/or working off the clock as referenced in Omar Nieves' deposition.

## OBJECTIONS

Defendant objects to this interrogatory on the grounds that it is overbroad, unduly burdensome, seeks information that cannot be reasonably or readily obtained and is not reasonably accessible because of undue burden or cost and is irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence pertaining to Plaintiff's claims under the FLSA. Defendant also objects to this request on the grounds that it is not limited in temporal scope. Defendant also objects to this request on the grounds that counsel, in their Rule 26 conference,

agreed that Infinity would only be required to produce all emails from Plaintiff's email account (subject to privilege and confidentiality concerns) that were received or sent from 5PM to 9AM (Monday through Friday) and anytime on Saturdays and Sundays, in order to create a reasonable limitation on the scope of electronic discovery in this matter.

## DISCUSSION

As it relates to Request to Produce # 17 and as more fully addressed in Request to Produce # 7, Jason Baker was reprimanded by Omar Nieves for working off the clock. In fact, his manager, Omar Nieves testified that he noticed Mr. Baker sending after hour emails but remarkably never noticed the dozens of after hour emails sent by Plaintiff. Plaintiff should have the opportunity to ascertain how Mr. Nieves truly learned of Mr. Baker's off the clock work and what was done by Defendant to remedy the same claimed infraction which resulted in Plaintiff being terminated.

## CONCLUSION

For the reasons set forth above, Plaintiff's Motion to Compel should be GRANTED. Also, despite due diligence by Plaintiff in conducting discovery (i.e. Plaintiff has already taken 9 depositions thus far), given the short discovery period in this case, Plaintiff will not be able to complete discovery by July 30, 2012. Plaintiff also seeks leave to potentially conduct an additional 3 depositions in addition to the 10 depositions permitted under rules depending on what information is revealed in the documents that Defendants is hopefully required to produce as a result of this motion to compel. Given that trial in this case is set in December 2012, there will be no prejudice to Defendant and no trial deadlines will be affected if the relief requested herein is granted.

## CERTIFICATE OF CONFERRAL

The undersigned counsel for Plaintiff hereby certifies that he has conferred with opposing counsel as required by the local rules. The parties could not agree to the resolution of the issues raised in this motion to compel.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed on July 23, 2012 with the Clerk of Court using CM/ECF along with having served all counsel of record or pro se parties identified on the service list incorporated herein in the manner specified, either via transmission of Electronic filing generated by CM/ECF or in some other authorized manner for those counsel or parties not authorized to receive electronically Notice of Electronic Filing.

        Loren Law Group
        320 South State Road 7 - Suite 300
        Plantation, FL 33317
        Phone:      (954)585-4878
        Facsimile:  (954)585-4886
        E-Mail:     JLoren@Lorenlaw.com

        _____
        James M. Loren, Esquire
        Bar No.: 55409

**SERVICE LIST**

Jackson Lewis LLP
Jason Schatz, Esquire
2 S. Biscayne Blvd.
One Biscayne Tower - Suite# 3500
Miami, FL 33131
Phone:     (305)577-7600
Fax:       (305)373-4466
CM/ECF:  jason.schatz@jacksonlewis.com
Counsel for Defendant

Jackson Lewis LLP
Tammy L. Baker, Esq.
800 Shades Creek Parkway -Suite # 870
Birmingham, AL 35209
Phone:     (205)332-3100
Fax:       (205)332-3131
CM/ECF:  bakert@jacksonlewis.com
Counsel for Defendant