UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

Case No.: 12-20148-CIV-OTAZO-REYES

**CONSENT CASE**

RICHARD MAHSHIE,

    Plaintiff,

vs.

INFINITY INSURANCE COMPANY,

    Defendant.
_____/

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

THIS CAUSE came before the Court upon Defendant Infinity Insurance Company's Motion for Summary Judgment [D.E. 31] (hereafter, "Motion for Summary Judgment"). Upon a thorough review of the record, the Court finds that disputed issues of material fact preclude issuance of a judgment as a matter of law in favor of the defendant. Accordingly, the Motion for Summary Judgment is DENIED.

    **I.**    **PROCEDURAL AND FACTUAL BACKGROUND**

On January 12, 2012, Plaintiff Richard Mahshie ("Mahshie") commenced this action against his former employer, Infinity Insurance Company ("Infinity") [D.E. 1]. Mahshie's two-count Complaint asserts: (1) violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., for unpaid overtime wages; and (2) breach of oral contract for failure to pay wages. Complaint [D.E. 1 at ¶¶ 9-14]. On March 20, 2012, Chief District Judge Federico A. Moreno severed Mahshie's claim for breach of oral contract from the FLSA claim. See Order Severing FLSA Case [D.E. 13 at 1]. In his FLSA claim, Mahshie is seeking a total of $226,376.79 for

unpaid overtime and liquidated damages plus attorneys' fees and costs. See Amended Statement of Claim [D.E. 22 at 5]; Complaint [D.E. 1 at ¶ 10].

Mahshie began his employment at Atlanta Casualty Company on June 8, 1994. See Declaration of Pamela Jenkins ("Jenkins Declaration") [D.E. 32-1 at ¶ 6]. He became employed by Infinity in 2002, when Infinity and Atlanta Casualty Company combined. See Id. Mahshie held multiple appraiser positions during his eighteen years of employment in the insurance industry. See Defendant's Statement of Undisputed Facts (hereafter, "Def.'s Facts") [D.E. 32 at ¶ 12]. From October 2007 until March 2010 he was a "Senior Field Appraiser," at which time he was reassigned to the position of "field appraiser" until his termination in December 2011. Id. Mahshie's job required him to travel around his assigned region to inspect insurance claim vehicles, complete appraisals and upload estimates. See Def.'s Facts [D.E. 32 at ¶ 1]; Mahshie Affidavit [D.E. 54-1 at ¶ 14]. Mahshie worked from home when he was not driving around to do appraisals. See Mahshie Affidavit [D.E. 54-1 at ¶ 14]. Mahshie claims that he worked approximately twenty hours of unpaid overtime almost every week since his pay period ending on January 24, 2009 until his final pay period ending on December 24, 2011. See Amended Statement of Claim [D.E. 22 at 3-5].

Infinity argues that final summary judgment on the FLSA claim is proper as to liability because Mahshie cannot demonstrate 1) that he worked overtime without compensation and 2) that Infinity knew or should have known about the overtime work. In the alternative, Infinity argues that partial summary judgment is proper as to liquidated damages and the extended statute of limitations because Mahshie has failed to demonstrate that the alleged failure to pay him

overtime was willful and that Infinity lacked good faith.[1] As more fully explained below, disputed issues of material fact preclude granting Infinity's Motion for Summary Judgment.

## II. STANDARD OF REVIEW

A motion for summary judgment should be granted if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Moore ex rel. Moore v. Reese, 637 F.3d 1220, 1232 (11th Cir. 2011) (internal citation and quotation marks omitted). The "genuine issue summary judgment standard is very close to the reasonable jury directed verdict standard . . . . In essence [] the inquiry under each is the same: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986) (internal citation and quotation marks omitted).

In considering a motion for summary judgment, a court is to view the facts and draw "all reasonable inferences in favor of the nonmoving party." Reese, 637 F.3d at 1231; see also Wideman v. Wal-Mart Stores, Inc., 141 F.3d 1453, 1454 (11th Cir. 1998) (stating that the court is "required to view the facts in the light most favorable to the nonmovant"). A court should not grant summary judgment "[i]f a reasonable fact finder could draw more than one inference from the facts, and that inference creates a genuine issue of material fact." Cornelius v. Town of Highland Lake, Ala., 880 F.2d 348, 351 (11th Cir. 1989), *overruled* on other grounds by White v. Lemacks, 183 F.3d 1253 (11th Cir. 1999). "All doubt as to the existence of a genuine issue of

---

[1] Under the FLSA, a finding of willfulness and absence of good faith results in an extension of the statute of limitations from two to three years and a doubling of the award as liquidated damages. See 29 U.S.C. §§ 216(b), 255(a) & 260.

3

material fact must be resolved against the moving party." Pippin v. National Union Fire Ins. Co. of Pittsburgh, Pennsylvania, 845 F. Supp. 849, 850 (M.D. Fla. 1994).

### III. PRELIMINARY EVIDENTIARY ISSUES

**1. Authenticity of Mahshie's Exhibits 2-20**

In its Reply in Support of Motion for Summary Judgment [D.E. 46], Infinity asks the Court to strike Exhibit Nos. 2-20 attached to Mahshie's Statement of Disputed Facts on the grounds that they are unauthenticated. Id. at 3. However, Mahshie authenticated Exhibit Nos. 3, 5, 7, 8, 9, 11, 17, 19, and 20 in his affidavit in opposition to Infinity's Motion for Summary Judgment. See Mahshie Affidavit [D.E. 54-1 at ¶ 2]. With respect to Exhibit Nos. 2, 4, 6, 13, 14, and 18, Infinity filed the same exhibits in support of its Statement of Undisputed Material Facts. See Def.'s Fact at Exhs. 2 & 7 [D.E. 32-2 at 72, 74, 150 & D.E. 32-7 at 86, 91, & 125]. Exhibit Nos. 10, 12, and 15, which are computer notes, email records and appraisal logs, are Infinity's own documents. Finally, Exhibit No. 16 is a collection of Sunpass records provided to Mahshie pursuant to a subpoena directed to the Florida Department of Transportation. The documents were accompanied by a records custodian affidavit. Though the records custodian affidavit states the incorrect number of pages, Infinity did not object to the records on authenticity grounds in its Motion in Limine on this subject. See Motion in Limine [D.E. 33 at 13-15]. Further, even if the records custodian affidavit is insufficient, it is permissible to allow "otherwise admissible evidence to be submitted in inadmissible form at the summary judgment stage." McMillian v. Johnson, 88 F.3d 1573, 1584 (11th Cir. 1996) (emphasis in original). Therefore, the Court finds it appropriate to consider Mahshie's exhibits.

## 2. Sufficiency of Mahshie's Affidavit

Infinity also argues that portions of Mahshie's affidavit in opposition to the Motion for Summary Judgment should be disregarded on the grounds that such averments are: (1) speculative or conclusory; or (2) contradict his deposition testimony and, therefore are a sham. See Reply in Support of Motion for Summary Judgment [D.E. 46 at 3-4]. In support of its objections to the affidavit, Infinity submitted a copy of the affidavit with notations around the portions that it claims should be disregarded. See Reply in Support of Motion for Summary Judgment at Exh. 1 [46-1 at 2-9]. The portions that Infinity argues are conclusory or speculative mainly concern Infinity's knowledge of the hours that Mahshie worked. However, the Court has not relied upon these affidavit averments in reaching its conclusion that there are disputed issues of material fact.

With respect to whether the affidavit is a sham, the Eleventh Circuit has stated that "[a] definite distinction must be made between discrepancies which create transparent shams and discrepancies which create an issue of credibility or go to the weight of the evidence." Tippens v. Celotex Corp., 805 F.2d 949, 953-54 (11th Cir. 1986). Thus, a court must "find some inherent inconsistency between an affidavit and a deposition before disregarding the affidavit." Rollins v. TechSouth, Inc., 833 F.2d 1525, 1530 (11th Cir. 1987). Here, the Court does not find the requisite inconsistency. At most, the affidavit explains and augments the deposition testimony. See Sears v. PHP of Alabama, Inc., No. 2:05CV304-ID, 2006 WL 932044, at *11 (M.D. Ala. Apr. 10, 2006) ("an affidavit which clarifies, augments, elaborates or explains prior deposition testimony is not 'inherently inconsistent' within the meaning of the sham affidavit rule"). Accordingly, the Court will not disregard Mahshie's affidavit as a sham affidavit.

5

### IV. UNDISPUTED FACTS

Infinity required that its employees work a 38.75 hour workweek and each employee was responsible for recording his or her own time. See Def.'s Facts [D.E. 32 at ¶¶ 3-4]. In April 2010, Infinity employees began recording their time on a daily basis and indicating their exact hours, including start and finish times, as well as lunch breaks, in an application called "eTime." See Def.'s Facts [D.E. 32 at ¶ 22]. Infinity's policies with regard to reporting hours were distributed to all of its employees in the "eTime Guidelines." See Def.'s Facts [D.E. 32 at ¶ 6]. The "eTime Guidelines" informed employees that they should report all time that they worked and should not work off-the-clock. See Def.'s Facts [D.E. 32 at ¶ 7]. Infinity required its employees to verify their timecards. See Mahshie Deposition at Exhs. 55-57 [D.E. 32-7 at 144-49]. Emails reminding employees to submit and verify their timecards contain the following statement, "Verification and approval of your timecard signifies that you are affirming that your timecard accurately reflects time worked and benefit time taken, if any, during the pay period." Id. at 144, 147, 149. Employees were also told that supervisors needed to preapprove overtime. See Def.'s Facts [D.E. 32 at ¶ 10]. Employees were warned that failure to adhere to these policies could result in termination. See Def.'s Facts [D.E. 32 at ¶ 6]. Mahshie was paid for all of the work hours that he reported to Infinity, including overtime. See Def.'s Facts [D.E. 32 at ¶ 29].

### V. DISPUTED MATERIAL FACTS

**1. Whether Mahshie consistently worked overtime.**

Mahshie claims that appraisers were specifically told to clock in to work from the time they arrived at their first appraisal and clock out upon completion of the last appraisal. See

Mahshie Affidavit [D.E. 54-1 at ¶ 14]. Pursuant to these instructions, Mahshie would report approximately 38.75 hours per week. [D.E. 54-1 at ¶ 9]; Jenkins Declaration at Exh. 5 [D.E. 32-2 at 1-153]. However, Mahshie claims that he spent ten to twelve hours each day driving from appraisal to appraisal, that he would actually begin work approximately one and a half hours before he drove to his first appraisal, and that he also worked for three hours after returning home from his last appraisal. See Mahshie Affidavit [D.E. 54-1 at ¶¶ 14-15, 24].

### 2. Whether Mahshie reported all of the overtime hours that he claims to have worked.

On December 20, 2011, Infinity terminated Mahshie, citing "his long term failure to meet performance expectation and his intentional misconduct regarding working off the clock even after being specifically told not to do so." Mahshie Deposition at Exh. 48 [D.E. 32-7 at 125]. According to Infinity, Mahshie contested the basis of his termination by writing, "I did not work off the clock," on his "Notice of Dismissal" in the section entitled "Employee Statement." Mahshie Deposition at Exh. 48 [D.E. 32-7 at 125]; Def.'s Facts [D.E. 32 at ¶ 52]. Mahshie swore that his statement on the "Notice of Dismissal" was in reference to working on a day that had been preapproved for vacation, and was not intended to suggest that all of his timesheets were accurate or to acknowledge having been paid overtime for all of the hours that he worked. See Mahshie Affidavit [D.E. 54-1 at ¶ 28].

### 3. Whether Mahshie failed to report his overtime hours for fear of losing his job.

Mahshie contends that he reported the hours that he was told to in order to keep his job. See Pl.'s Facts [D.E. 54 at ¶ 3]. At his deposition, when Mahshie was asked whether he approved his time and acknowledged that it was correct, Mahshie stated the following, "I knew

7

that I worked a lot more time than what I approved, but I wasn't going to fight the system." Mahshie Deposition [D.E. 41-4 at 231:18-25].

### 4. If Mahshie underreported his hours, whether Infinity knew, or had reason to know, that Mahshie was working overtime hours for which he was not being compensated.

Infinity claims that if Mahshie did work the unpaid overtime he claims, it had no reason to know that he was underreporting his time. Def.'s Fact [D.E. 32 at ¶¶ 33, 36]. Further, Infinity contends that it did not expect that Mahshie would intentionally underreport his time, that it did not regularly check time entries into its databases or compare the entries with Mahshie's timesheets, and that when it became aware that Mahshie was working off-the-clock, it took remedial measures. See Def.'s Facts [D.E. 32 at ¶¶ 33, 39, 46-47]. For instance, Infinity issued a memorandum to Mahshie that stated that he was "[p]ossibly working in the evening or on the weekend without recording this time in eTime." Mahshie Deposition at Exh. 8 [D.E. 32-7 at 86]. Mahshie, however, disputes Infinity's evidence. First, Mahshie "denies having any recollection" that he received the memorandum. Plaintiff's Revised Statement of Undisputed Facts (hereafter, "Pl.'s Facts") [D.E. 54 at ¶ 46]. Next, Mahshie has proffered the deposition testimony of one of his supervisors, Geoff Shaw, who stated that, after noticing that Mahshie was uploading assignments into a database in the evening and on the weekends, he conducted monthly spot checks of Mahshie's upload times. See Shaw Deposition [D.E. 41-6 at 21:15-25:22, 29:24-30:16].

According to Mahshie there was an unspoken "don't ask, don't tell policy" with respect to reporting overtime at Infinity. Mahshie's Affidavit [D.E. 54-1 at ¶ 21]. Mahshie claims that his supervisors knew about his off-the-clock work. See Mahshie's Affidavit [D.E. 54-1 at ¶¶ 12, 16]. For instance, Mahshie produced an email to his direct manager, Jimmy Casas ("Casas"), in

8

which Mahshie reported that his workday ended at 5:15 PM on November 8, 2011, yet in the same email he states that he "kept working into the night." Pl.'s Facts at Exh. 9 [D.E. 54-9 at 1]. Further, Mahshie produced an email sent to his supervisor, Omar Nieves ("Nieves"), and Casas at 7:09 PM on June 2, 2010; however, Mahshie's timecard from the week of May 30, 2010 through June 5, 2010 shows that he clocked out at 5:30 PM on June 2nd. See Pl.'s Facts at Exhs. 6-7 [D.E. 54-6 at 1, 54-7 at 1]. Another email from Mahshie to Nieves was sent on May 19, 2010 at 11:32 PM yet his timecard shows that he clocked out at 5:46 PM. See Pl.'s Facts at Exhs. 3-4 [D.E. 54-3 at 1, 54-4 at 1].

Infinity contends that Mashie affirmed at his deposition that he never told anyone at Infinity that he was not reporting hours on his timecard and that Mahshie testified that no one ever saw him working off the clock. Def.'s Facts [D.E. 32 at ¶ 31]. However, Mahshie also testified that his managers may have seen him working "after hours" at Charley's Paint and Body. See Mahshie Deposition [D.E. 41-4 at 225:3-10]. Moreover, Orestes Veliz, a field manager, testified that he saw Mahshie at night at Charley's Paint and Body and also acknowledged that Mahshie had told him that management did not want overtime hours reflected on the timecard. See Velez Deposition [D.E. 41-8 at 26:16-25, 55:20-24].

## VI. DISCUSSION

As noted above, Infinity argues that it is entitled to summary judgment as to liability on Mahshie's FLSA claim. In the alterative, Infinity seeks partial summary judgment on the issue of willfulness and the good faith defense.

### 1. Liability

The FLSA states, in pertinent part:

9

> [N]o employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C § 207(a)(1). To recover for a claim of unpaid overtime wages, the plaintiff bears the burden of establishing that he or she performed work for which he or she was not properly compensated. See Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 686-87 (1946). Thus, in order to prevail on his FLSA claim, Mahshie must prove that he "w[as] suffered or permitted to work without compensation." Allen v. Bd. of Pub. Educ. For Bibb Cnty., 495 F.3d 1306, 1314 (11th Cir. 2007). "Courts have interpreted this to mean that a FLSA plaintiff must demonstrate that (1) he or she worked overtime without compensation and (2) the [employer] knew or should have known of the overtime work. Id. at 1314-15.

"In reviewing the extent of an employer's awareness, a court need only inquire whether the circumstances were such that the employer either had knowledge of overtime hours being worked or else had the opportunity through reasonable diligence to acquire knowledge." Reich v. Dep't of Conservation & Nat'l Res., 28 F.3d 1076, 1082 (11th Cir.1994) (internal citation and quotation marks omitted). When analyzing the extent of an employer's knowledge, the Eleventh Circuit recognizes that "an employer's knowledge is measured in accordance with his duty to inquire into the conditions prevailing in his business." Id. (internal citation and quotation marks omitted). The fact that an employee is not subject to personal supervision does not vitiate that duty. Id.

Infinity argues that it did not know, and had no reason to suspect, that Mahshie was working hours that he did not report. Although the parties agree that Mahshie was paid for all of

10

the time that he reported, including some overtime, see Def.'s Facts [D.E. 32 at ¶ 29], this does not end the matter. There is disputed evidence that Mahshie engaged in off-the-clock work that he was not compensated for and that his supervisors knew or should have known about the unrecorded time. Infinity claims that Mahshie was aware that by submitting his timecard, he was certifying to the true and correct amount of hours worked. See Def.'s Facts [D.E. 32 at ¶ 21]. Infinity also uses Mahshie's statement on his "Dismissal Notice" as further proof that Mahshie was compensated for all of his time worked. See Def.'s Facts [D.E. 32 at ¶ 52]. Finally, Infinity contends that Mahshie's supervisors and managers were unaware that he was working off the clock, and when they did become aware about the activity, proper action was taken. See Def.'s Facts [D.E. 32 at ¶¶ 33, 39, 46-47].

This evidence, however, is controverted by Mahshie's own testimony and sworn statements that he worked overtime and felt pressure not to report the overtime for fear of getting fired. See Pl.'s Facts [D.E. 54 at ¶ 3]. Mahshie claims that Infinity was aware that he was working unpaid overtime and that Infinity "condoned and ratified the overtime worked and then intimidated and prevented Plaintiff from recording his true hours worked." Response to Motion for Summary Judgment [D.E. 39 at 3]. Mahshie points to emails to his supervisors and managers, as well as testimony of a manager, in support of his contention that he was working off-the-clock and that his managers and supervisors knew this. See, e.g., Pl.'s Facts at Exhs. 6-7 [D.E. 54-6 at 1 & 54-7 at 1]; Pl.'s Facts at Exh. 9 [D.E. 54-9 at 1]; Velez Deposition [D.E. 41-8 at 26:16-25 & 55:20-24]. While Infinity dismisses the emails as *de minimis*, when viewed in conjunction with Mahshie's testimony, a jury could infer that Mahshie was indeed working overtime and that his supervisors and managers knew or, at least through reasonable diligence,

should have known about his hours, and that he failed to report his overtime because doing so was discouraged.

In Gonzalez v. Metropolitan Delivery Corp., No. 10-23296-CIV, 2012 WL 1442668, at *4 (S.D. Fla. Apr. 26, 2012) (Scola, J.), the plaintiffs' timesheets contained an acknowledgment that the hours listed were correct, and by signing the timesheet, the employees affirmed that the hours they reported were accurate. As in the instant case, the employees were paid for all time that they reported, including overtime, and the plaintiffs testified at their depositions that they did not report all of their overtime hours for fear of being disciplined or fired. Id. at *7. District Judge Robert N. Scola, Jr. acknowledged that the plaintiffs also gave contradictory testimony that they recorded all of their working time and were paid for it. Id. Nevertheless, Judge Scola found that there was enough evidence based on their testimony to support an inference that the plaintiffs worked overtime hours, but failed to report them out of fear for being fired. Id. In doing so, Judge Scola noted that "the Court will leave the business of judging witness credibility and the significance of facts to the jury." Id. Likewise, Mahshie has presented enough evidence to support an inference that he worked overtime hours, but failed to report them for fear of being disciplined or fired. As in Gonzalez, the resolution of the underlying factual disputes and witness credibility issues should be left for the jury.

Infinity also contends that because Mahshie was not subject to direct supervision and had flexibility in his schedule, he was trusted to report the complete amount of hours worked. However, the fact that an employee is not subject to personal supervision does not vitiate an employer's duty to "inquire into the conditions prevailing in his business." Reich, 28 F.3d at 1082.

Based on the foregoing, Infinity's motion for summary judgment as to liability is denied.

## 2. Willfulness and the Good Faith Defense

Infinity further argues that even if summary judgment as to liability is denied, partial summary judgment with respect to willfulness and the good faith defense is proper. Pursuant to the FLSA, if an employer acted willfully, an employee is entitled to a three year statute of limitations period instead of two years. See 29 U.S.C. § 255(a). The FLSA further provides for recovery of liquidated damages unless "the employer acted in good faith and had 'reasonable grounds for believing that he was not violating the Act.'" Allen, 495 F.3d at 1323 (quoting 29 U.S.C. § 260); see also 29 U.S.C. § 216(b).

Infinity contends that even if Mahshie can establish that it violated the FLSA, he has failed to demonstrate that Infinity acted willfully as required for an extended statute of limitations. Infinity claims that it had no reason to believe that it was in violation of the FLSA because Mahshie reported his own hours, was paid for all hours that he reported, and was instructed to report all of the hours that he worked. Infinity further contends that its "good faith is clear" because Mahshie testified that he was paid for all of the hours that he reported, including overtime, and therefore Infinity has shown that it "made an effort to ascertain what the FLSA requires and made an effort to act in accordance" with it. Motion for Summary Judgment [D.E. 31 at 19] (citing Dyback v. State of Fla. Dept. of Corrections, 942 F.2d 1562, 1566 (11th Cir. 1991)). Mahshie responds that these issues are not appropriate for summary judgment as they are questions better left to the trier of fact.

Indeed, whether a plaintiff can show that the defendant willfully violated the FLSA is "a question of fact for the jury not appropriate for summary disposition." Morrison v. Quality

Transports Servs., Inc., 474 F. Supp. 2d 1303, 1313 (S.D. Fla. 2007). Moreover, the issue of good faith is resolved upon a showing of willfulness. The Eleventh Circuit has stated that "a jury's finding in deciding the limitations period question that the employer acted willfully precludes the court from finding that the employer acted in good faith when it decides the liquidated damages question." Alvarez Perez v. Sanford-Orlando Kennel Club, Inc., 515 F.3d 1150, 1166 (11th Cir. 2008). Accordingly, partial summary judgment is not proper as to the issues of willfulness and good faith.

### 3. CONCLUSION

Based on the foregoing considerations, it is

ORDERED and ADJUDGED that Defendant's Motion for Summary Judgment [D.E. 31] is **DENIED**.

DONE AND ORDERED in Chambers at Miami, Florida, this 15th day of November, 2012.

ALICIA M. OTAZO-REYES
UNITED STATES MAGISTRATE JUDGE

cc: Counsel of Record